[Decided June 29, 1893.]

## COLE v. LOGAN.

[S. C. 33 Pac. Rep. 568.]

1. IRRIGATION — PRIOR APPROPRIATION OF WATER — TITLE BY RELATION.—One who, two and a half years before the building of a dam by another, settles upon government land, and diverts and appropriates the water of a creek for the purpose of irrigation, is a prior appropriator of such water, although he does not make final proof of his claim and obtain a patent therefor until after the other obtains his patent; in such case the title relates back to the time of the settlement: *Faull* v. *Cooke*, 19 Or. 455; *Larsen* v. *Or. Ry. & Nav. Co.* 19 Or. 240, cited and approved.

·2. WATER RIGHTS — DILIGENCE AND PECUNIARY CONDITION OF APPROPRIATOR.— To entitle a claimant of a water privilege to hold his rights, he must commence to divert the water within a reasonable time after his settlement or claim, and must prosecute the work to completion with reasonable diligence. Ill health or pecuniary inability of a claimant will not excuse the failure to actually appropriate the water within a reasonable time.

3. IDEM.— One who spends ten years in completing a ditch for purposes of irrigation, over a new survey, after having been compelled to abandon a prior one by reason of encountering quicksand, doing little more in the ten years than he had before in two years in the same kind of land, giving as a reason for his delay his inability to raise the necessary means to prosecute the work,— fails to prosecute the work with such reasonable diligence as will permit his appropriation of water thereunder, to date back to the time of commencing the work.

4. IDEM — PURPOSE AND AMOUNT OF APPROPRIATION.— Water may be appropriated for beneficial purposes in such quantities as may be necessary, provided it be done with reasonable promptness (*Simmons* v. *Winters*, 21 Or. 34, and *Hindman* v. *Rizor*, 21 Or. 112, cited and approved); but such use cannot be suspended for a long time and then resumed to a greater extent than before, to the injury of subsequent appropriators on the stream.

5. APPROPRIATION OF WATER — ABANDONMENT.— A prior appropriator of water for the purpose of irrigating his homestead, who, after getting a part of it under cultivation, fails to add to his improvements, and permits a portion of the cultivated part to grow up to willows, will be

entitled, as against subsequent appropriators, to only a sufficient amount of water for the irrigation of the cultivated part.

6. DIVERSION OF WATER.—A prior appropriator of the water of a creek for irrigating purposes cannot move his point of diversion above the dam of a subsequent appropriator, so as to injuriously affect the latter's rights.

7. COSTS—DISCRETION OF COURT—CODE, § 554.—The trial court is invested with a discretion in allowing costs in equity cases, which will not be reviewed except for an abuse thereof: *Lovejoy* v. *Chapman*, 23 Or. 571, approved and followed.

Malheur County: JAS. A. FEE, Judge.

J. L. Cole and B. F. Kendall sought to enjoin Wm. L. Logan from diverting the waters of Willow Creek. There was a decree dividing the water, and both parties appeal. Modified.

*Olmstead & Courtney*, for Plaintiffs.

*R. G. Wheeler*, and *J. L. Rand* ( *C. A. Johns* on the brief), for Defendant.

The material facts are that Willow Creek rises in a spur of the Blue Mountains, flows in a southeasterly direction in a well-defined channel through the lands of the parties hereto, and empties into the Malheur River in Malheur County, Oregon; that the defendant has diverted the waters thereof by a ditch on the north side of the creek, and the plaintiffs by a ditch on the south side, and that their lands are arid and nearly valueless without water, but by irrigation they have become very productive and yield large crops of hay and fruit. The defendant settled upon his tract in July, 1870, built a dam in the channel of the creek, dug a ditch, and conducted the water to a garden of about two acres, cultivated by him in 1871. On January 27, 1872, the said tract having in the meantime been surveyed and platted as the east half of the northwest quarter and the west half of the northeast quarter of section twenty-four, in township fifteen south, of range forty-two east, of the Willamette Meredian, he filed a pre-

XXIV. OR.— 20.

emption declaratory statement thereon, which, on November 3, 1874, he commuted into a homestead, made his final proof July 5, 1880, and on December 10, 1880, obtained the United States patent. The plaintiff, J. L. Cole, in October, 1871, made a homestead filing upon the south half of the southeast quarter, the northwest quarter of the southeast quarter, and the northeast quarter of the southwest quarter, of section fourteen, in said township and range, and on November 30, 1878, obtained a patent therefor. About December, 10, 1872, the said Cole and one C. Eaton commenced to build a dam in the channel of said creek at a point about three miles above defendant's dam, which they completed about January 10, 1873, and about three months thereafter they had completed about one mile of the ditch from the dam towards their lands. Eaton assigned his interest in the ditch to one James Cole, who filed a preëmption claim upon the southwest quarter of the northwest quarter, and the northwest quarter of the southwest quarter, of section fourteen, in said township and range, and on October 30, 1882, obtained the United States patent therefor, which tract of land and interest in the ditch he conveyed to the plaintiff, B. F. Kendall, who is now the owner thereof. In October, 1871, the defendant surveyed a line for a new ditch from his homestead to a point on the creek about one mile below that where plaintiffs afterwards built their dam, and, on January, 1872, filed with the county clerk of the proper county a notice of his claim to appropriate two hundred and fifty inches of the water of said creek, and commenced to dig the ditch on the line of the survey, but, encountering quicksand after completing it to a point within six feet of the creek, he was obliged to abandon it, and in 1873, surveyed another line to a point about thirty yards above plaintiffs' dam, and commenced to dig a ditch on the new line, and, after working thereon each year, and expending about two thousand dollars, he completed it

in 1883. The plaintiffs assisted him in building a new dam, moved their tap to this point, and, as they testify, agreed that the defendant might have the surplus water of the creek. On March 6, 1883, the defendant acquired the legal title from one W. R. Kelly and wife to the northeast quarter of the southeast quarter of said section fourteen, and moved to a house thereon about one-half mile from his former home. The defendant also claimed a possessory right to the southwest quarter of section thirteen in said township and range upon a preëmption filing thereon, but the title thereto was also claimed by The Dalles Military Wagon Road Company.

From 1872 to 1891 the El Dorado Ditch Company had diverted about one thousand inches of water from Burnt River, and discharged it into Willow Creek about twelve miles above defendant's homestead, and in 1877 the defendant had permitted the Willow Creek Irrigating Company to enlarge the ditch first made by him, and convey the water of Willow Creek across his homstead to irrigate lands lying below his claim. A small stream known as Becker Creek flowed across the Kelly tract, and another small stream known as Pole Creek flowed across the plaintiff Cole's land, and each emptied into Willow Creek at places above the defendant's point of diversion on his homestead. Kelly and the defendant used the waters of Becker Creek in irrigating the Kelly place, and Cole had used the waters of Pole Creek. The defendant, prior to 1877, had cultivated about twelve acres of his homestead, but after the Willow Creek Irrigating Ditch Company had enlarged his ditch, the cultivated land on the homestead had nearly grown up with willows. The plaintiffs and defendant used the same dam, and diverted the waters of the creek at opposite points, from 1884 to 1889, when, the dam becoming filled with debris from the mines above, plaintiffs moved their tap further up the stream, and on May 19. 1891, the defendant moved his tap

above theirs and diverted the water for five hours, where-upon the plaintiffs again moved their ditch above his, diverted all the water of the creek, and commenced this suit, in which they allege a prior appropriation of the whole amount of water, consisting of about four hundred inches, and a diversion thereof by defendant, who denies the allegations of the complaint, except the diversion of one hundred and fifty inches, and alleges that he was the prior appropriator of the said waters. After the issues were completed the testimony was taken before a referee, and at the hearing the court found that defendant was the prior appropriator of twenty inches of water, and decreed that he was entitled to divert that quantity, under a six-inch pressure, and that plaintiffs were entitled to divert three hundred inches under a like pressure, and that neither party should recover costs, from which decree the defendant appeals; while the plaintiffs appeal from so much thereof as decrees the prior right of defendant to twenty inches of water and enjoins them from interfering therewith, and also from the portion thereof relating to costs. Modified.

MR. JUSTICE MOORE delivered the opinion of the court:

1. The evidence conclusively shows that the defendant was a prior appropriator of the waters of Willow Creek. He made his settlement upon an unsurveyed tract of land with the intention of acquiring title thereto from the government of the United States, and had diverted and appropriated the water of said creek two and one half years prior to the building of plaintiffs' dam, and when the defendant made his proof and obtained his patent his title related back to the time of his settlement: *Faull* v. *Cooke*, 19 Or. 455 (26 Pac. 662); *Larsen* v. *Or. Ry. & Nav. Co.* 19 Or. 240 (23 Pac. 974); *Sturr* v. *Beck*, 133 U. S. 541 (10 Sup. Rep. 350); and hence it follows that at the time plaintiffs made their appropriation of the waters of Wil-

low Creek the defendant's rights as a prior appropriator had attached, and he was entitled to the quantity of water he had diverted and appropriated for the purpose of irrigating his homestead, and that the plaintiffs made their diversion and appropriation subject thereto: *Kaler* v. *Campbell*, 13 Or. 596 (11 Pac. 301).

2.   The evidence shows that on Willow Creek there was a local custom which required the claimant to file for record with the county clerk a notice of his claim to appropriate the water of a natural stream, and that in pursuance of such custom Logan, in January, 1872, filed with the county clerk of Baker County a notice of his claim to appropriate two hundred and fifty inches of the water of said creek upon the line of his survey made in October, 1871. If, instead of being obliged to abandon his ditch on this line in 1873, he had completed it, so as to have been able to divert the water thereby, and appropriate it in irrigating his homestead, he would, doubtless, have had a prior right to the use of a sufficient quantity to irrigate his land, assuming that his diversion was begun within a reasonable time, and was prosecuted with due and reasonable diligence; and his appropriation would have related back at least to the time of commencing the work, if not to the time of giving the notice or to the time of the survey: Pomeroy, Riparian Rights, § 52.   When he abandoned the survey of 1871, and made another to tap the creek at or near plaintiffs' dam, in order to enable him to hold the rights acquired under such original survey, he must have commenced the diversion within a reasonable time, and must have prosecuted it with due and reasonable diligence.   In *Ophir Min. Co.* v. *Carpenter*, 4 Nev. 534, LEWIS, C. J., in a similar case, says: "The law does not require any unusual or extraordinary efforts, but only that which is usual, ordinary, and reasonable. The diligence required in cases of this kind is that constancy or steadiness of purpose or labor which is usual

with men engaged in like enterprises, and who desire a
speedy accomplishment of their designs; such assiduity
in the prosecution of the enterprise as will manifest to the
world a *bona fide* intention to complete it within a reason-
able time.  *   *   *   It would be a most dangerous doc-
trine to hold that ill health or pecuniary inability of a
claimant of a water privilege will dispense with the neces-
sity of actual appropriation within a reasonable time, or
the diligence which is usually required in the prosecution
of the work necessary for the purpose.  We find no recog-
nition of such doctrine in the law.  Nor are we disposed
to adopt it as the rule to govern cases of this kind." The
authorities clearly show that the claimant's pecuniary
condition is not an excuse, and, though the doctrine may
seem harsh, it is nevertheless right.  If the rule were
otherwise, the prior settler on a creek, if he were ill or
poor, could make a survey from his claim to some desira-
ble point above him on the stream, or give any other
notice of his intention to appropriate the water, and by
doing such work as his health or means would permit,
could ultimately divert the water at such point, and claim
a prior right, without regard to the number of subsequent
appropriators below such point of diversion or above it,
when the water was used and returned before it reached
the claimant's land.

3.  While the evidence shows that the ditch on the
line of the new survey was commenced in 1873, that some
work was done thereon each year, and that it was com-
pleted so as to divert the water in 1883, at a cost of
about two thousand dollars, it fails to show what amount
of labor or of money was expended thereon in any one
year, and Logan pleads as an excuse for the delay his
inability to raise the necessary means to prosecute the
work.  The evidence further shows that from 1871 to
1873, Logan dug about one and one fourth miles of ditch,
and that quite a portion of it was through quicksand, but

that it took ten years to dig about one and one half miles to complete the new ditch. It does not appear that there was much difference in the character of the country through which the new ditch was dug as compared with that along the line of the old one, nor that it was difficult to procure labor or material for the work; and the only excuse for delay being pecuniary inability, we must conclude, in connection with the other facts, that the defendant did not prosecute his diversion with due and reasonable diligence, and that he could have completed the ditch much sooner than he did. Hence it follows that Logan could not by the completion of his ditch in 1883, claim a diversion of the water so as to relate back to 1871, and that the diversion at this point was subsequent to plaintiffs.

4. The defendant, as a prior appropriator, is entitled to a quantity of water sufficient to irrigate his homestead, and his original appropriation may be made with reference to the quantity of water needed to irrigate the land he designs to put into cultivation. "The needs or purpose for which the appropriation is made, is the limit to the amount of water which may be taken": *Simmons* v. *Winters*, 21 Or. 34 (27 Pac. 7). The defendant, as a prior appropriator, did not find it necessary to divert or appropriate in 1871 all the water he ultimately intended to use in the irrigation of his lands. As he adds to the area of his cultivated land he may increase the amount of his diversion until he has acquired the quantity necessary to properly irrigate the whole tract, and any subsequent appropriator diverts the water subject to such prior claim. To entitle the defendant, however, to the benefit of such an appropriation, he should, within a reasonable time, apply the water to such beneficial use. As fast as he can reasonably put his homestead into cultivation, he is entitled to divert and use the water for that purpose. The rule established in *Simmons* v. *Winters* is just and reason-

able; but it is not intended that because a prior appro-
priator is entitled to a given quantity of water necessary
to irrigate the land he intends to cultivate, he can suspend
his improvements an unreasonable time, and then, by
adding to the area of his cultivated land, be restored to
his original intentional diversion, when subsequent appro-
priators have acquired rights in the stream. The fact
that he for an unreasonable time delays additional culti-
vation should be construed into an abandonment of his
original claim to divert a sufficient quantity to irrigate
his whole tract, and his appropriation, after such unrea-
sonable delay, should be confined to his necessary use as
applied to the lands he had cultivated within a reasonable
time before any subsequent rights had accrued: *Hind-
man* v. *Rizor*, 21 Or. 112 (27 Pac. 13).

5. The defendant, however, having made a prior
appropriation of the water at his homestead, has the prior
right to the use thereof, unless he has abandoned his claim
thereto. The fact that he in 1873 commened the survey of
another ditch from his homestead to tap the creek at a
point further up the stream shows that he had not aban-
doned the idea of irrigating his land; and while it appears
that his old ditch had been in 1877 enlarged and used,
with his consent, by the Willow Creek Irrigating Com-
pany, it also appears that from 1872 to 1891 the El Dorado
Ditch Company had diverted about one thousand inches
of water from Burnt River, and discharged the same into
Willow Creek at a point above defendant's homestead, and
thus it would seem to follow, in the absence of any evi-
dence of the right of the Willow Creek Irrigating Com-
pany, that it took no rights from the defendant therein
except as to the surplus water from Burnt River, and that
defendant had claimed and reserved his right to the use of
his original diversion from Willow Creek. The evidence
also shows that defendant had at one time cultivated on
his homestead about twelve acres, but that since he moved

from that tract he not only failed to add to its improvement, but has permitted the portion of it so cultivated to grow up in willows, which, taken in connection with the facts and circumstances of the case, indicates that the defendant had abandoned his intention to increase the area of cultivated land upon his homestead. The court below found that twenty inches was the quantity to which he was entitled, and while there is much conflict of testimony upon this subject, we do not feel like disturbing this finding. It is to be presumed, however, since the waters of Becker Creek flow across the Kelly tract, and the defendant uses it for irrigation thereon, that the court must have considered this fact, and that the award of twenty inches must have been from the waters of Willow Creek, and did not include any of the water of Becker Creek.

6. The defendant having made a diversion of the water in 1871 could not thereafter change the point of his diversion if it injuriously affected the rights of any subsequent appropriator: *Kidd* v. *Laird*, 15 Cal. 161; *Butte Mining Co.* v. *Morgan*, 19 Cal. 609. Did the change of the point of diversion injuriously affect the plaintiffs? It appears from the evidence that the plaintiffs diverted and used all the water of the creek, but that the plaintiff Kendall returned the waste water to the creek at a point above, and the plaintiff Cole at a point below defendant's land. If Kendall, as a subsequent appropriator, had, with knowledge of the defendant's diversion, tapped the creek at a point above, used and returned the whole volume of the water above the defendant's point of diversion, the defendant could not have been injured thereby, while under the same state of facts the defendant, by changing his point of diversion and tapping the creek above Kendall's dam, could have taken the whole amount of the water and would have injuriously affected that plaintiff. If by taking the whole the plaintiff Kendall would have been affected, he would also have been affected injuriously by the taking of

a part, and hence it follows that any change made by the defendant to a point above plaintiff's dam would injuriously affect their right. The defendant is entitled to the flow of twenty inches of water in the channel of the creek, and may divert the same at any point below the plaintiff's dam, for the purpose of irrigating any of his lands. The testimony does not show what amount of water flows in the channel of the creek at any place below this dam, and the plaintiffs will be enjoined from diverting the waters from the channel of said creek so as to reduce defendant's supply to less than twenty inches of water, not including that of Becker Creek, and this quantity will be measured under a six-inch pressure at a point below that where the plaintiff Kendall's ditch enters the creek.

7. Appellants contend that they should have had a judgment for their costs and disbursements. Section 554, Hill's Code, provides that in equity cases the party in whose favor a decree is rendered shall be allowed his costs and disbursements in like manner and amount as in an action unless the court otherwise directs. This invests the trial court with a discretion in the taxation of costs and disbursements, and such discretion will not be reviewed except for an abuse thereof: *Lovejoy* v. *Chapman,* 23 Or. 571 (32 Pac. 687). The plaintiffs' cause of suit was based upon an alleged prior appropriation, while the court found that the defendant was the prior appropriator, and there were also many equities in favor of the defendant which the court considered, and hence the conclusion upon the taxation of costs was not an abuse of discretion.

The decree of the court below will be modified and one entered in accordance with this opinion. Modified.