Argued January 13, decided January 20, rehearing denied February 10, 1914.

## IN RE SCHOLLMEYER.*

(138 Pac. 211.)

**Waters and Watercourses—Natural Watercourses—Riparian Rights—Effect of Appropriation.**

1. One who seeks to appropriate a fixed amount of water from a stream thereby waives his riparian rights, though the stream runs through his land, and the diversion works he proposes to install would be entirely upon his land.

> [As to what constitutes appropriation of water, see note in 60 Am. St. Rep. 799. As to nature of riparian rights and lands to which they attach, see note in Ann. Cas. 1913E, 709.]

**Waters and Watercourses—Appropriation of Water Rights—Priorities.**

2. Neither a prior appropriator of water for domestic purposes nor a subsequent appropriator for a municipal water supply will be allowed to monopolize the waters of a stream or to obtain more than can be reasonably applied to beneficial uses.

> [As to respective rights of appropriators and riparian owners, see note in 43 Am. Dec. 269.]

**Waters and Watercourses—Appropriation of Water Rights—Priorities.**

3. Section 6627, L. O. L., providing that the proposed use of water to be appropriated conflicts with determined rights or is a menace

————————

*On the question of the right of prior appropriator of water, see note in 30 L. R. A. 665.                                        REPORTER.

to the safety and welfare of the public, the application shall be referred to the board of control for consideration, and that applications for municipal water supplies may be approved to the exclusion of all subsequent applications, does not give precedence to a municipal corporation or one intending to supply water to a town or its inhabitants, over prior claimants.

Waters and Watercourses—Appropriation of Water Rights—Priorities.

4. A subsequent application for a permit to appropriate water for a municipal supply may constitute a substantial reason for the allowance to a prior applicant of a less amount than he applied for for domestic purposes, within Section 6627, L. O. L., providing that an application may be approved for a less amount than is applied for, if substantial reasons exist therefor.

Waters and Watercourses—Appropriation of Water Rights—Priorities.

5. Where a stream measures 3 37/100 cubic feet of water per second at low water, and a subsequent appropriator for a municipal water supply has diverted water by a pipe flowing 17/100 cubic feet per second, a prior applicant for 8 feet per second, who has a dairy farm with 10 to 14 milch cows, 4 horses, and 6 hogs, and wishes to use the water for domestic and farm power purposes and domestic supply, will be allowed for 3 2/10 cubic feet per second, the subsequent appropriator 17/100 cubic feet per second, and the remainder be allowed to flow to the intake of the prior appropriator.

From Tillamook: PERCY R. KELLY, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

The state water board refused the application of H. Schollmeyer, filed February 25, 1911, for permission to appropriate the waters of Bobs Creek, flowing through his premises in Tillamook County, as against the subsequent application of one, A. C. Anderson, filed March 9, 1911, to appropriate the same waters at a higher point of diversion. Aggrieved by this ruling, Schollmeyer appealed to the Circuit Court of Marion County, Oregon, and, from an adverse decision there, appeals to this court.                MODIFIED.

For appellant there was a brief over the names of *Mr. Ralph R. Duniway* and *Messrs. King & Saxton,* with oral arguments by *Mr. Duniway* and *Mr. Will R. King.*

For respondent there was a brief, with oral arguments by *Mr. Andrew M. Crawford,* Attorney General, and *Mr. M. J. Gersoni.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. Although Bobs Creek runs through the lands of the petitioner, Schollmeyer, and the diversion works which he proposes to install would be entirely upon his own land, yet he cannot claim anything as a riparian proprietor in this proceeding. Because he seeks to appropriate a fixed amount of water from the stream, he thereby waives his rights as a riparian proprietor and must stand or fall in this proceeding as an appropriator: *Low* v. *Schaffer,* 24 Or. 239 (33 Pac. 678); *North Powder Co.* v. *Coughanour,* 34 Or. 9 (54 Pac. 223); *Brown* v. *Baker,* 39 Or. 66 (65 Pac. 799, 66 Pac. 193); *Davis* v. *Chamberlain,* 51 Or. 304 (98 Pac. 154); *Caviness* v. *La Grande Irr. Co.,* 60 Or. 410 (119 Pac. 731).

2. Schollmeyer's application was for eight cubic feet of water per second to be used, as stated in his petition, for "domestic and farm power purposes and domestic supplies." The subsequent petition of A. C. Anderson was for three cubic feet per second to be applied, as stated therein, to "municipal supply, * * to supply the city of Nehalem." His application filed March 9, 1911, contained this condition added thereto under date of April 12, 1911: "I hereby agree for myself and assigns, that all my right, title and interest in and to the waters granted in this application, and the works constructed thereunder, will be transferred to the city of Nehalem at a fair and reasonable valuation at any time that the city of Nehalem, through its proper officers, may request; and I further agree that the state engineer may in his indorsement to the application limit it in accordance with the provisions of this stipulation." It appears that afterward whatever right was thus initiated was assigned by Anderson to a private corporation, the Nehalem Water Company, incorporated May 11, 1911. As shown by its

articles, this concern was incorporated "to purchase, own, possess, acquire, construct, maintain, operate and conduct a system of waterworks to supply water for domestic and municipal and power purposes and uses and to furnish power and artificial light for such uses and purposes, including dams, dam sites, reservoirs, reservoir sites, tanks, head works, pipe-lines, poles, wires, and all other incidental constructions; to lease, purchase, acquire, possess, own, mortgage, hypothecate, and dispose of water, light, power, water rights, rights of way and other real and personal property in general to do and perform every and all act or acts necessary or convenient or incidental to carry into effect the objects aforesaid." These are all the parties appearing by the record to have any interest in the controversy before us. It is a contest between a private individual on one hand and a private corporation on the other, both seeking to acquire paramount rights in the use of the waters in question. This serves to distinguish this case from that of *McMinnville* v. *Howenstine,* 56 Or. 451 (109 Pac. 81, Ann. Cas. 1912C, 193), where the city, acting directly in its own right, endeavored by eminent domain to condemn the use of certain waters flowing across the lands of Howenstine. There is a marked difference, also, between this case and that of *Booth-Kelly Lbr. Co.* v. *Eugene,* 67 Or. 381 (136 Pac. 29), where the city of Eugene, acting directly in its own right, had constructed a canal diverting the waters of the McKenzie River for municipal purposes. In some features the case resembles *Cookinham* v. *Lewis,* 58 Or. 484 (114 Pac. 88, 115 Pac. 342), where the plaintiffs, who were private persons, essayed to appropriate a large amount of the waters of Powder River. It appeared that they had no immediate use for the water, and that their project was evidently an attempt at monopoly so as to be in a position to compel the purchase

of water from them by those who should settle on certain arid lands which could be irrigated only by the use of that water. That being an irrigation case, the court, speaking through Mr. Chief Justice EAKIN, said:

"The right to the beneficial use of water to be acquired under the permit applied for * * is not an opportunity to acquire a monopoly of the water of a stream for promiscuous sale, but must contemplate a use upon specific lands which * * shall become appurtenant to the land to which it is applied."

The same principle should be applied here. Neither the plaintiff nor the private corporation, the Nehalem Water Company, ought to be allowed to monopolize the waters of the creek in question or to obtain more than can be reasonably applied to beneficial uses.

3. The statute mainly applicable to the controversy in question is Section 6627, L. O. L., reading as follows:

"Upon receipt of an application, it shall be the duty of the state engineer to make an indorsement thereon of the date of its receipt and to keep a record of the same. If upon examination the application is found to be defective, it shall be returned for correction or completion, and the date of, and reasons for the return thereof, shall be indorsed thereon and made a record in his office. No application shall lose its priority of filing on account of such defects, provided acceptable maps and drawings are filed in the office of the state engineer within thirty days from the date of said return to the applicant. All applications which shall comply with the provisions of this act shall be recorded in a suitable book kept for that purpose and it shall be the duty of the state engineer to approve all applications made in proper form which contemplate the application of water to a beneficial use, but when the proposed use conflicts with determined rights, or is a menace to the safety and welfare of the public, the application shall be referred to the board of control for consideration. It shall be the duty of the board to enter an order directing the refusal of such appli-

cation, if, after full hearing, the public interest demands. An application may be approved for a less amount of water than that applied for, if there exists substantial reasons therefor, and in any event shall not be approved for more water than can be applied to a beneficial use. Applications for municipal water supplies may be approved to the exclusion of all subsequent appropriations, if the exigencies of the case demand upon consideration and order by the board of control.''

As interpreted by *Cookinham* v. *Lewis,* 58 Or. 484 (114 Pac. 88, 115 Pac. 342), priorities in appropriations are preserved by this statute. It is there said that ''applications for municipal water supplies may be approved to the exclusion of all subsequent appropriations.'' Considering all these things, it is apparent that no precedence is given to a municipal corporation as such, as against prior claimants. Although intending to supply water to a town or its inhabitants, no private claimant has preference over another prior in time; all other things being equal. It is only when the contemplated use is a menace to the safety and welfare of the public that the application shall be referred to the board of control for consideration. It would seem from a proper construction of this section that priorities of appropriation constitute a species of property in the proprietor which cannot be taken from him except by the right of eminent domain upon suitable compensation first assessed and tendered.

4, 5. The testimony of the witnesses at the hearing relates mainly to the availability of water supplies from various streams in the neighborhood of Nehalem City for use by that municipality. The only direct action of the city itself which appears in the record is the grant of a franchise to the Nehalem Water Company for the use of the streets in laying its pipes. No question arises on the record against the actual priority of Schollmeyer's application. The only accurate

evidence about the amount of water in the creek is found in the report of the engineer of the water board who measured the stream. It seems that, prior to the hearing before the water board, the company installed its works, diverting the water from a point above Schollmeyer's premises by a pipe flowing 17/100 cubic feet per second. Under these conditions, depleted by the amount of water flowing through the pipe, the stream measured 3 2/10 cubic feet of water per second, on September 29, 1911, at the proposed point of diversion by Schollmeyer. This seems to be the condition of the stream at the season of low water. The testimony shows that the petitioner has a dairy farm on which he keeps from 10 to 14 milch cows, 4 horses, and 6 hogs. This is the average number of his domestic animals. His contemplated appropriation, as stated in his application, was for domestic and farm power purposes and domestic supplies. With 3 2/10 cubic feet per second to be diverted, as stated in Schollmeyer's petition, the engineer computes that it would furnish 8 4/10 theoretical horse-power. From a careful consideration of the testimony, it is believed that this would be sufficient for all reasonable and practical uses on a farm like Mr. Schollmeyer's, with the amount of stock described, and that his application should be approved for not more than that amount. Although the city of Nehalem is not directly involved on the record, yet the situation, as shown by the testimony, constitutes a substantial reason in our estimation for approving Schollmeyer's request for a less amount ·than he applied for. Believing, therefore, that the statute contemplates the recognition of priorities in applications to appropriate water, and that the amount here allowed is sufficient for all practical purposes contemplated by the application of Schollmeyer, the decree of the Circuit Court will be modified so as to permit Schollmeyer, as a first appropriator, to take a constant

supply of 3 2/10 cubic feet of water per second at his point of diversion, as described in his application; that the Nehalem Water Company, as successor in interest to A. C. Anderson, the original applicant, be allowed to appropriate at its point of diversion 17/100 feet per second of the surplus water remaining after Schollmeyer's appropriation; and that the then resulting remainder be allowed to flow down to the proposed intake of the petitioner, Schollmeyer.

The decree of the Circuit Court is thus modified, without allowing costs or disbursements in this court to either party.   MODIFIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.