Argued January 24, affirmed March 6, 1917.

# In Re SUCKER CREEK.*

## (Determining Relative Water Rights.)[1]

### (163 Pac. 430.)

**Waters and Watercourses—Appropriation and Riparian Rights—Election.**

1. A settler has an election of relying on his riparian rights or to appropriate water of non-navigable streams, if subject to appropriation, but he cannot do both, and, having used the water as a prior appropriator, he waives the right to use it as riparian owner.

**Waters and Watercourses—Appropriation and Riparian Rights—Distinction.**

2. By appropriation each water right is superior to those subsequently initiated and completed, while the characterizing feature of riparian water rights is that each person's rights are correlated with those of other persons.

**Waters and Watercourses—Rights of Riparian Owner.**

3. A riparian owner may take all the water in a non-navigable stream if needed to satisfy his domestic wants.

**Waters and Watercourses—Appropriation and Riparian Rights—Distinction—Amount of Water.**

4. The amount of water of a prior appropriation can be definitely determined, but that to which a riparian owner is entitled cannot ordinarily be ascertained in advance, because each right must be exercised in subordination to rights of others.

[As to what constitutes appropriation of water, see note in 60 Am. St. Rep. 799.]

**Waters and Watercourses—Action to Determine Rights—Nature of Right.**

5. Where claimant's verified statement, claimed a definite amount of water for irrigation and alleged initiation of such right, and concluded with express claim of priority, and with the exception of the use of the word "riparian" in each case followed by the word "appropriation," did not otherwise suggest a riparian claim, and the contest was tried on theory of relative priority, *held*, that claimant elected to claim by appropriation, and hence waived the right to claim as riparian owner.

From Josephine: FRANK M. CALKINS, Judge.

---

*Authorities discussing the question of right of prior appropriator of water are collated in note in 30 L. R. A. 665.        REPORTER.

Department 1.   Statement by MR. JUSTICE HARRIS.

The relative rights to the waters of Sucker Creek and its tributaries were determined by the state water board pursuant to the provisions of Sections 6635 to 6671 L. O. L., inclusive, and Mary Ellen Leonard has appealed from the decree of the Circuit Court approving the findings made by the state water board.  Seven water users filed petitions in 1909, asking that the water board (then called the board of control) determine the relative rights of the various claimants to the waters of the stream and subsequently on April 13, 1910, the board granted the petition.  Notice was given of the time fixed for the examination of the stream by the state engineer and that the superintendent of Water Division No. 1 would commence the taking of testimony in support of the various claims to the waters of the stream on June 3 and 4 of 1910; and in response to the notices all the persons, firms and corporations who asserted any right to use water from Sucker Creek or its tributaries filed verified statements of their claims, aggregating 45 in number.

Mary Ellen Leonard is the record owner of two farms, one being spoken of as the Caldwell place and the other as the Home place.  The Caldwell place is located in sections 28 and 29 in township 39 south, range 7 west of the Willamette Meridian and consists of 320 acres of land which was patented on June 5, 1866. The Home place embraces 480 acres, and is located in sections 31 and 32 of township 39 south, range 7 west. A patent was issued for three forty acre pieces on May 1, 1869, and for another forty acre tract on June 20, 1870.  A homestead entry was filed on a part of this place in 1874 and a patent was issued for it on March 20, 1878.  A homestead entry was made on the re-

maining portion of the Home place in 1874 and a patent was subsequently issued by the government.

Sucker Creek flows in a southwesterly direction and after crossing the northwest corner of the Caldwell place pursues its course until it reaches the middle of the north line of the Home place where the creek enters and then crosses and emerges from the west side of this farm.

Mary Ellen Leonard filed four verified statements: Two for the premises known as the Caldwell place, one for the lands called the Home place, and the fourth, which need not be mentioned further, was for another tract. Printed blanks were prepared and sent to all the water claimants as required by Section 6638 L. O. L. These printed blanks contained questions followed by blank spaces to be filled out by inserting the answers of the claimant. Mary Ellen Leonard, as well as the other claimants, used these printed forms in making her verified statements. One of the two statements connected with the Caldwell place relates to water diverted through a ditch known as the Caldwell ditch while the other concerns water diverted through the Holland ditch or as it is sometimes called the Beach & Platter ditch.

The statement of the claim to water diverted through the Caldwell ditch states that the claim is based upon "Riparian Right, Appropriation & use"; that the water right was initiated and water was first used "Prior to 1855"; that the amount of water put to a beneficial use and for which a right was claimed was "6.56 second feet for land irrigated. 12.5 second feet for entire tract"; and under the heading "Remarks" the claimant says:

"Have used reasonable diligence in clearing land & claim right to water for all land mentioned herein pri-

ority to date to date of attaching of Riparian right & appropriation right.''

The verified statement which speaks of the Holland ditch states that the claim is based upon ''Irrigation by Riparian appropriation & use''; that the water was first used in 1854; and that ''I claim 5 6/8 second ft. for myself and 3 second feet as reserve for G. W. Dunn.'' G. W. Dunn is a nonriparian owner and has no right except as an appropriator.

The statement relating to the Home place avers that the claim is based upon ''Riparian right, appropriation, diversion & use''; that the right was initiated in 1865 and the water was first used in 1866 through what is called the mill race or sawmill ditch; that the amount of water claimed was ''16.58 second feet for land irrigated 25 second feet claimed for total acreage''; that the supply had not always been sufficient in August ''but practically all above me have come to me & agreed to let water down to prevent suits''; and finally after the heading ''remarks'' the claimant says:

''I have used reasonable diligence to clear and put my land under irrigation & claim the right to use of water for all nonirrigated land priority to date back to date of first use under said ditch.''

Following the filing of the verified statements a number of contests were instituted by various claimants. George W. Dunn, Christiana A. Trefethen and J. E. Holland filed separate contests against the claim of Mary Ellen Leonard to any water on account of the Holland ditch. J. D. Wimer contested the claim made by Mary Ellen Leonard to the Caldwell ditch and alleged that her claim ''should not be recognized by the board of control or the courts. The Caldwell ditch has been abandoned for years until recently and will

not carry any such amount of water as claimed."
J. D. Wimer also contested the claim made by Mary
Ellen Leonard concerning the Home place and alleged
that

"said claimant has not such a right and that claimant's
claim should not be recognized by the board of control
or the courts. First the mill-race was not dug for
irrigation purposes. Second the claim for priority is
wrong. Third the amount of land claimed as irri-
gated at present is in excess of what it should be.
Fourth the claim that the water users above said
claimant have habitually asked her permission to use
the water year after year is untrue."

Mary Ellen Leonard contested the water right
claimed by Mrs. Charles Trefethen and after referring
to the fact that the latter had alleged that her right
to the use of the water of Sucker Creek was initiated
in the year 1854 "and claimed priority as of said
date," the former averred that

"as a matter of fact the contestant's rights to the use
of the waters of Sucker Creek were acquired long prior
to any alleged rights of the said contestee and there-
fore contestant denies that contestee initiated her
rights as of said date or that they were so acquired by
any of contestee's predecessors in interest. Refer-
ence is hereby made to the various sworn statements
filed by the parties hereto before said superintendent
for further particulars.

"Wherefore contestant demands a hearing of the
matters facts & things herein alleged & for a de-
cree giving the contestant herein priority for waters
claimed in said sworn statements."

The water board found that Mary Ellen Leonard did
not own any interest in the Holland ditch and that she
was not entitled to divert any water through it. The
water board found that she was entitled to 0.3 of a cubic
foot per second through the Caldwell ditch for the irri-
gation of 15 acres of the Caldwell place and fixed 1857

as the date of relative priority; and that she had a right to divert 2.5 cubic feet per second through the mill-race ditch for the purpose of irrigating 125 acres of the Home place and held that 1865 was the date of relative priority. The board also determined that she had an inchoate right to additional water for the Caldwell and Home places which would ripen into a completed right with 1908 as the date of relative priority in the event the claimant reclaimed all her lands within a specified time.

The findings of the water board narrate the history of all the many ditches through which the waters of Sucker Creek have been diverted and a minute account is given of the uses to which the water had been put and the places where as well as the names of the persons by whom it had been used. Apparently nothing was left undone in the attempt to ascertain the truth concerning the various water rights claimed by different persons, firms and corporations. All the claimants except Mary Ellen Leonard are evidently satisfied with the adjudication for she alone has appealed.

Affirmed.

For appellant there was a brief over the name of *Messrs. Emmons & Webster,* with an oral argument by *Mr. Lionel R. Webster.*

For the state water board there was a brief submitted over the name of *Mr. James T. Chinnock.*

For respondents there was a brief with oral arguments by *Mr. Gus Newbury* and *Mr. H. D. Norton.*

Mr. Justice Harris delivered the opinion of the court.

1. Quoting from her printed brief the appellant says that this appeal presents one question: "Has Mrs.

Leonard waived her riparian rights for the irrigation of her land?'' Sucker Creek crosses both the Caldwell place and the Home place and all the lands of the two farms are riparian within the meaning of the precedents of this jurisdiction. It is now too late, however, to debate whether a riparian owner can divert and use water from a stream by virtue of a right acquired by prior appropriation and also assert a right to the surplus as a riparian owner. Repeated decisions have wedded this court to the doctrine that a settler upon a non-navigable stream has an election either to rely upon his rights as riparian proprietor or to make an appropriation of the water, if it is subject to appropriation, and claim as an appropriator, but he cannot do both. One can only be acquired by active and affirmative steps, while the other is incident to and, in the absence of a waiver or other loss of the right, accompanies the ownership of riparian lands. To use the water of a stream as a prior appropriator is to waive the right to use the water of that stream as a riparian owner: *Low* v. *Schaffer*, 24 Or. 239, 246 (33 Pac. 678); *North Powder Co.* v. *Coughanour*, 34 Or. 9, 22 (54 Pac. 223); *Brown* v. *Baker*, 39 Or. 66, 70 (65 Pac. 799, 66 Pac. 193); *Williams* v. *Altnow*, 51 Or. 275, 300 (95 Pac. 200, 97 Pac. 539); *Davis* v. *Chamberlain*, 51 Or. 304, 310 (98 Pac. 154); *Andrews* v. *Donnelly*, 59 Or. 138, 144 (116 Pac. 569); *Bowen* v. *Spaulding*, 63 Or. 392, 395 (128 Pac. 37).

2, 3. The right of appropriation is incompatible with the rule of riparian proprietorship. The doctrine of appropriation excludes the idea of equality and makes each water right superior to all others subsequently initiated and completed and inferior to all that have been previously acquired, while the characterizing feature of riparian ownership when applied to irrigation

is equality or, perhaps to speak more exactly, the right of each person is correlated with the right of every other person, although a riparian owner may take all the water in the stream if needed to satisfy domestic wants.

4. The right of prior appropriation can be measured by a fixed rule and the amount of water can be definitely determined, but the exact quantity of water which a riparian proprietor is entitled to use for irrigation cannot ordinarily be ascertained in advance, for the reason that the right of each must be exercised in subordination to that of all the others: *Williams* v. *Altnow,* 51 Or. 275, 298 (95 Pac. 200, 97 Pac. 539) ; *Brown* v. *Baker,* 39 Or. 66, 70 (65 Pac. 799, 66 Pac. 193) ; *Caviness* v. *La Grande Irr. Co.,* 60 Or. 410, 422 (119 Pac. 731) ; *Jones* v. *Conn,* 39 Or. 30, 34 (64 Pac. 855, 65 Pac. 1068, 87 Am. St. Rep. 634, 54 L. R. A. 630) ; 53 C. L. J. 128; *Crawford Company* v. *Hathaway,* 67 Neb. 325 (93 N. W. 781, 108 Am. St. Rep. 647, 60 L. R. A. 889).

In *Bowen* v. *Spaulding,* 63 Or. 392, 395 (128 Pac. 37), speaking through Mr. Justice Burnett, this court said:

"When a person has appropriated to his exclusive use a fixed quantity of water and proposes to maintain that holding against all comers, he abandons the rule of riparian owner, and assumes that of a tenant in severalty."

Other adjudications are to the same effect: *Caviness* v. *La Grande Irr. Co.,* 60 Or. 410, 421 (119 Pac. 731) ; *In re Schollmeyer,* 69 Or. 210, 212 (138 Pac. 211) ; *Hedges* v. *Riddle,* 75 Or. 197, 198 (146 Pac. 99, 146 Pac. 964).

5. Measured by every test Mary Ellen Leonard, and so far as disclosed by the evidence each of her predecessors in title, elected to claim as a prior appropriator

and this election therefore operated as a waiver of the right to claim as a riparian owner. For the Caldwell ranch she claimed in her verified statement a definite amount of water for irrigation purposes and alleged that such "water right" was initiated and the water applied to a beneficial purpose prior to 1855. For the Home place she claimed a definite amount of water for irrigation and explained her claim by averring that her "water right" was initiated in 1865 and that the water was first used in 1866. She concluded each of these two verified statements with an express claim of priority and in one she added the information that practically all users on the stream above her had come to her and agreed to let water down to prevent suits. Moreover, after first referring "to the various sworn statements filed by the parties hereto before said superintendent for further particulars" Mary Ellen Leonard contested the claim made by Mrs. Charles Trefethen and concluded with a prayer "for a decree giving the contestant herein priority for waters claimed in said sworn statements." Similar language was used by appellant when contesting the water right claimed by John McDougall who appears to be a riparian owner. It is a noteworthy fact, too, that in 1891 at the dictation of her husband from whom she derived title, Mary Ellen Leonard wrote and he signed and caused to be served a notice saying that he claimed—

"the right to use all the water of Sucker Creek at said mill whenever he shall see fit to use it for running said mill or for irrigating purposes, as against all persons on said creek, by virtue of the prior appropriation—excepting only the ditches of Samuel White and Beech & Platter, which were constructed before the mill-race was dug to said mill."

With the exception of the verified statements filed by Mary Ellen Leonard and two others, none of the veri-

fied statements filed with the division superintendent in June, 1910, contained even the slightest suggestion of a riparian right, but with the exceptions mentioned all the asserted rights involved in the adjudication were claimed solely upon the doctrine of prior appropriation. Some of the claimants were nonriparian owners and others owned riparian lands. The contests were tried and the order of determination was made on the theory that the determination of the relative rights to the waters of Sucker Creek depended upon the relative priorities of all the claimants. The contest filed by J. D. Wimer against Mary Ellen Leonard illustrates his understanding of the claims being asserted by her. It is true that she employed the word "riparian" in each of her statements but it is also true that in each instance that word was followed and limited by the word "appropriation." Omit the single word "riparian" and each statement would be utterly void of any affirmative information that Mary Ellen Leonard was claiming as a riparian owner, but on the contrary the claim would be unequivocally that of a prior appropriator. It is plain that in her verified statements the appellant claimed as an appropriator and she emphasized her claims of priority in every contest that she filed. So far as we can know from an inspection of the record each of her predecessors elected to claim as an appropriator and she has likewise chosen, not only by her conduct but also by her pleadings, to assume the role of an appropriator. She has waived her right to use water as a riparian owner. The decree is affirmed without costs in this court.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.