Argued February 24, affirmed March 16, modified on rehearing April 27, 1915.

## WILEY *v.* WHITNEY.

(146 Pac. 1093; 147 Pac. 938.)

**Appeal and Error—Grounds of Review—Presentation in Lower Court.**

1. In an equity suit, where defendants made no showing that they were misled by the statement of facts in the reply, the fact that the reply was a departure from the complaint is no ground for reversal.

**Dower—Mortgage as Bar.**

2. A husband and wife acquired a donation land claim. The wife died, and the husband married plaintiff. Thereafter the husband, plaintiff joining, mortgaged his undivided half of the claim. *Held,* that, a patent having been issued to the husband for the south half of the claim, the mortgage lien attached only to the undivided half of the south half of the claim, and, notwithstanding foreclosure, plaintiff was, upon the husband's death, vested with a dower estate in an undivided half of the south half of the claim.

**Deeds—Execution—Requisites.**

3. A written instrument, not sealed, witnessed, or acknowledged, is insufficient to convey title.

Mortgages—Foreclosure—Strict Foreclosure.

4.  Where an attorney agreed to advance money to buy in the . state's claim against plaintiff's land, and plaintiff agreed that, if she did not reimburse him within a stipulated time, he should become entitled to that portion of the land, there was a confidential relation between the parties, and plaintiff's rights to the land could be barred only by a strict foreclosure.

From Linn: WILLIAM GALLOWAY, Judge.

Department 2.   Statement PER CURIAM.

This is a suit by Elizabeth Wiley against J. J. Whitney, Lizzie Whitney, Arthur Stitts, Fred Wadtli and Will Putnam.

The substance of the complaint is that the plaintiff, Elizabeth Wiley, is and at all the times stated has been the owner in fee of the donation land claim of Andrew and Lucy Wiley, in Linn County, Oregon, containing 321.75 acres, and that she is in the sole possession thereof; that without her consent the defendants, about December 10, 1911, forcibly entered upon the land and unlawfully cut and removed therefrom 150 trees; that they threaten to continue such trespass, . and unless restrained they will commit further waste upon the premises; that they unlawfully claim an interest in the real property, which claim is without right; and that the plaintiff has no plain, speedy or adequate remedy at law.   The prayer is that the defendants be required to set forth the nature of their claim; that it may be decreed to be invalid, and that the plaintiff is the owner in fee of the land; that she recover $3,000 as treble damages for the trespass; and for such other and further relief as may be equitable.

The effect of the answer, after denying the material averments of the complaint, is that Andrew Wiley and Lucy Wiley, his then wife, settled upon the real property described in the complaint as their donation land claim; that Lucy died, and Andrew remarried Eliza-

beth, the plaintiff; that he and his second wife, on February 22, 1870, executed to the board of school land commissioners a mortgage of the undivided half of the claim, to secure the payment of $1,000; that it was the intention of the mortgagors, when the lien was created, that it should be an encumbrance upon the husband's half of the donation land claim when his separate estate in the premises was legally set off to him; that on March 23, 1874, by consideration of the Circuit Court of the State of Oregon for Linn County, the lien of the mortgage was duly foreclosed, and the real property decreed to be sold to satisfy the sum of $1,122.21, with interest from that time at the rate of 10 per cent per annum; that on March 18, 1881, the United States granted to Andrew Wiley the south half of the donation land claim and to the heirs of Lucy Wiley the north half; that, no enforced sale of the land having been made, the board of school land commissioners on March 13, 1882, upon due service of process, obtained a supplemental decree authorizing the issuance of an order of sale of the premises to satisfy the sum of $2,019.60 then due, and the further sum of $69.97 as costs and disbursements; that a writ was issued to the sheriff of that county, who on May 26, 1882, duly sold to the board of school land commissioners the undivided half of the donation land claim for the sum of $1,600; that the sale was duly confirmed, and, no redemption having been made, the sheriff on August 31, 1893, executed to the purchaser a deed of the mortgaged premises; that on September 16, 1907, and for more than 10 years prior thereto, the State of Oregon claimed to be and was the owner in fee and in the possession of the south half of the donation land claim of Andrew Wiley and wife; that at the time last mentioned the plaintiff requested the defendant J. J. Whit-

ney to purchase that land from the state, to take the title in his own name, and pay for the premises his own money, which necessary sum she agreed to repay on or before January 1, 1908, with interest and expenses, and then subscribed her name to a writing to that effect, in which it was stipulated, "And in the event I fail to pay the said J. J. Whitney as above stated, then in that event I do hereby promise and agree to surrender all right or rights I have to the aforesaid land and premises to the said J. J. Whitney"; that thereupon he purchased the land from the state, paying therefor, of his own money, $1,000, which sum was then the reasonable value of the premises, and the deed was executed to him; that he immediately notified the plaintiff of what he had thus done, and if she had repaid him the money, interest and expenses within the time specified he would have executed to her a good and sufficint deed to the land; that she failed and refused to pay any part of such sum at any time; that by the terms of the writing last mentioned time was made of the essence of the agreement, and by reason of the plaintiff's failure and refusal to make the payments agreed upon she surrendered all her right to or interest in the land, and in consequence thereof the defendant J. J. Whitney, since his purchase from the state, has been the owner of the real property, and in the open, notorious and exclusive possession thereof under a claim of title thereto in fee; and that the only trees cut by either of the defendants have been severed from the south half of the donation land claim.

For a second defense it is averred, in substance, that the defendant J. J. Whitney and his grantors have been in the exclusive, uninterrupted, adverse possession of the south half of the donation land claim since August 31, 1893, when the sheriff's deed was executed

to the State of Oregon, and that whatever trees have been felled by either of the defendants have been cut from that part of the claim. The prayer of the answer is that J. J. Whitney be decreed to be the owner in fee of the south half of the claim, that the plaintiff be enjoined from interfering therewith or asserting any claim thereto, adverse to his title, and for such further relief as may seem proper.

The reply contradicted some of the statements of new matter in the answer, and further averred substantially that for more than 25 years the plaintiff had been in the open, notorious and adverse possession of the entire donation land claim. A further reply states in effect that for more than 15 years prior to January 1, 1908, and ever since that time, the plaintiff has been the owner in fee of the entire donation land claim; that she is quite aged, and has no knowledge of legal matter, while the defendant J. J. Whitney has practiced law in Oregon many years, and is thoroughly conversant with business transactions; that for a long time prior to January 1, 1908, he acted as counsel and attorney for her in legal and business matters, and she implicitly relied upon him; that during the year 1907 he was acting in that capacity for her and advised her as to the condition of her title to the land, saying he would investigate the claim of the state thereto and ascertain what sum would be required to secure a relinquishment of its rights to the premises and thereby remove a cloud from her title; that on September 16, 1907, and while he was acting as attorney and counselor for her, she engaged him to secure from the board of school land commissioners an acquittance of the interest of the State of Oregon in the premises upon the best possible terms, and agreed to repay him the sum of money necessarily laid out for that purpose,

together with such other sums as might necessarily be incurred by him; that acting as her agent and attorney, and not otherwise, he paid $1,000 to the State of Oregon for its relinquishment of all claims to her land; that he falsely and fraudulently represented to her that in order to remove the cloud from the title the application to the board of school land commissioners "has to go through a kind of process of law," and relying upon that statement she was induced to allow him to take the relinquishment in his own name, and he now holds the title as trustee for her and not otherwise; that as soon as she learned he had secured the title, she offered to pay him $1,000 and all other expenses that he had necessarily incurred, but he then and ever since refused to accept the money, or to execute to her a deed of the land; that at all times since hearing of the execution of the relinquishment she had been ready, able and willing to repay the sum of $1,000 and all other expenses he had incurred; that he has no title to the premises in his own right, and the interest which he has therein is held in trust for her; and that when the title was thus obtained by him the value of the south half of the donation land claim then was and now is many times the sum which he paid out. The prayer of the reply is for a decree as set forth in the complaint.

A motion to strike out the second further and separate reply, because the averments so objected to constituted a departure from the allegations of the complaint, was denied. Thereupon a demurrer, interposed to that part of the final pleading and based on the same ground, was overruled. The cause was tried, and from the evidence given the court made findings of fact and of law, and thereupon decreed that the plaintiff was

the owner in fee of the entire donation land claim; that neither of the defendants had any estate or interest in the premises, except the lien of the defendant J. J. Whitney; that the plaintiff had sustained damages in the sum of $150 by the cutting and removal of trees from her land; that the defendant J. J. Whitney had a lien on the south half of the claim to secure the sum of $1,000, with interest from October 22, 1907, and $150 as attorneys' fees, amounting to $1,369.33, which sum was to draw interest from April 20, 1914, the date of the decree, until paid; that upon the plaintiff's payment of that amount to the clerk of the trial court within 60 days J. J. Whitney should execute to her a deed of the premises, and upon his failure so to do the decree should stand in lieu thereof. From this decree the defendants appeal.

AFFIRMED.   MODIFIED ON REHEARING.

For appellants there was a brief over the names of *Mr. William R. Bilyeu, Mr. William S. Risley* and *Mr. John J. Whitney,* with oral arguments by *Mr. Bilyeu* and *Mr. Risley.*

For respondent there was a brief with oral arguments by *Mr. W. S. McFadden* and *Mr. Arthur Clarke.*

Opinion PER CURIAM.

1. Whether the allegations of the complaint and the reply are so inconsistent as to amount to a variance is unimportant. A statement of matter in a reply, set forth as a cause of suit, which averments do not amplify, support or fortify the allegations of the complaint, cannot be so prejudicial in a suit in equity, where the issues are tried by the court, as in an action at law, where the disputed questions to which the par-

ties have narrowed their several averments are to be tried by a jury: *Brown* v. *Baker,* 39 Or. 66 (65 Pac. 799, 66 Pac. 193). No showing was made at the trial that the defendants were misled by the statement of facts in the reply that were not set out in the complaint. The action of the court in denying the motion to strike out parts of the reply, and in overruling the demurrer to a portion of that pleading, will not be reviewed.

2–4. Although the reply seems to recognize the defendant J. J. Whitney as holding the legal title to the south half of the donation land claim in trust for the plaintiff, she undoubtedly had such an estate in the premises, as will be hereinafter stated, as to enable her to enjoin a trespass upon the land and to have an alleged adverse claim of title determined. A careful examination of the evidence shows that the defendant J. J. Whitney as the plaintiff's attorney advised her as to what she should do in order to protect her adverse possession of the land against the claims of the state. Thus in a letter which he wrote her April 14, 1903, he says:

"Your favor of the 13th inst. at hand and contents noted. There is nothing we can do, except you want to hold possession and see that whoever purchases said premises are kept out of possession, which will force them to bring suit of ejectment against you."

In a letter written to the plaintiff February 10, 1904, he stated:

"You are relying on holding under the statute of limitations, and all you have to do is to watch yourself and the land and be sure and keep possession, and if you do as I have directed you there will be no trouble about your retaining possession. If I find out at any time that there is a move on foot to your disadvantage, I will notify you."

January 9, 1907, he wrote her as follows:

"I was in Salem yesterday, and whilst there I had a talk with Crawford, the Attorney General, also with Mr. West, the clerk of the state land board, with regard to the land that is in dispute between you and the school fund. Crawford had before him a partial abstract furnished to him by Weatherford & Wyatt, under which they claim title to the land under a sheriff's deed made by C. C. Jackson to the school board. I have thought the matter over as close as I could, and I have come to this conclusion that the best way for us to proceed is for you to make me a quitclaim deed for the land sold by Sheriff Jackson to the school board. I am of the opinion that, if I have such a deed from you, I can take the deed, and go before the land board, and make a deal with them by which I can get them to relinquish their rights. If I can do that, that will straighten the title so far as the school board is concerned. Then after that we can get the matter settled between the heirs of Andrew Wiley and yourself. By so doing the land will be in a condition by which you can sell it and a good title can be made. I can prepare the quitclaim from the description in the sheriff's deed. I am of the opinion that this is the cheapest and best plan that I can think of to straighten up that title. Please let me hear from you at your earliest convenience and oblige."

He sent her a letter January 30, 1907, saying:

"I wrote you some time since in relation to the unsettled condition of the title of 160 acres of your home place, and in that letter I suggested to you that it might be well for you to give me a quitclaim deed of your right in that 160 acres. My only object in that was to arm myself in such a way that I could deal directly with the school board. Since writing that letter they have ordered an abstract made of your ranch for the purpose of testing what rights you have in that piece of land. I am going to Salem in a few days for the purpose of appearing before the board on some other business, and while I am there this matter of

yours will come up, and I want to say to the board that
I will represent you in any shape that they see fit to
attempt to oust you of your rights. I don't care for
the deed. I simply want the authority to represent
you in the matter. I remember very well what our
talk was concerning your writing to each one of the
heirs for the purpose of your securing a quitclaim deed
from them. We may have to act in this matter before
you could possibly secure quitclaim deeds from the
Andrew Wiley heirs. I want to prevent if I can the
board doing anything that would be detrimental to
your interests or to the interests to the Wiley heirs.
If you want me to look after your interests before the
board, and if you will write me to that effect, I will
watch the matter for you, and if there is anything to
be done I will look after it promptly. I would like to
know what you will quitclaim your interest in the 160
acres of land that was sold to the school board a good
many years ago. I simply refer to your interests, and
not to the interests of the school board or the interests
of the Wiley heirs. If I bought your interests, I would
expect to have to buy the interests of the Andrew
Wiley heirs in said land, and I would also have to
settle with the school board for every right they have
in said land. Please let me hear from you at your
earliest convenience and oblige.''

On the 18th of June, 1907, in a letter which he wrote
the plaintiff he said in part:

''I was in Salem yesterday. I saw the Governor,
and he showed me a written opinion from A. M. Craw-
ford, the Attorney General, which gave the history of
the title of the land claimed by the school board that
belonged to the Wiley estate. * * I informed the Gov-
ernor that I would represent you in said litigation
and we would claim the land under adverse posses-
sion.''

When the plaintiff and her attorney agreed that he
should obtain from the state a relinquishment, he
wrote and she signed a memorandum which reads:

"Foster, Oregon, Sept. 16, 1907.

"It is hereby understood and agreed by and between Mrs. Elizabeth Wiley and J. J. Whitney that in the event the said J. J. Whitney settles with the state land board and pays said board in full for the south half of the D. L. C. of Andrew Wiley and Lucy Wiley, his wife, the same being notification No. 7630, and claim No. 50, Tp. 13 S., R. 1 east, and claim No. 43, that in that event I promise and agree to pay the said J. J. Whitney the amount of money he pays said board, principal and interest, and the expenses of making said settlement, on or before the 1st day of January, A. D. 1908, and in the event I fail to pay the said J. J. Whitney, as above stated, then in that event I do hereby promise and agree to surrender all right or rights I have to the aforesaid land and premises to the said J. J. Whitney.    ELIZABETH WILEY."

September 27, 1907, the defendant again wrote the plaintiff as follows:

"I have seen and talked with the state land board and I think I can settle with said board in a satisfactory manner. I have notified said board that I would be in Salem on next Wednesday for the purpose of settling said matter. If I get the business straightened up at that time, it will save the state board the necessity of bringing a suit to recover said land."

He wrote her November 10, 1907, saying:

"I settled with the school board for the south half of the D. L. C. of Andrew Wiley and wife, and I took a deed from them for said land. I have made a copy of the map made by the abstractors of the D. L. C. of Andrew Wiley and wife. Inclosed please find the same. You will see from the map how the land is divided. Now, I think that the long narrow strip ought to go with the land I bought of the school board. At least it would put both tracts of land in better shape, provided the ranch is divided. Now I am willing to sell out my interests in said ranch to you, or if we can agree I am willing to buy of you that long nar-

row strip, or if you desire, and we can agree, I am willing to buy the balance of your land which is 160.875 acres. Please let me bear from you, and let we know what you will take for the whole tract of 160.875, or what you will take for the 40.875 acres of land. The strip is about 25 rods wide, and I have been so very busy that it was difficult for me to get time to write to you before. Please let me hear from you and oblige.''

December 20, 1907, in another letter to her he states:

''Your favor of recent date at hand and contents noted. I am of the opinion that the best way for you and I is to have our land surveyed. We will then be able to know exactly what each one of us have got. After that is done I will fix a price on my land, and you can if you desire fix a price on yours. I am willing to buy or sell, and I am not particular about that.''

The mortgage, it will be recalled, undertook to create a lien upon the undivided half of the entire donation land claim. The United States patent, which was issued after the mortgage was given, granted the north half of the claim to the heirs of Lucy Wiley. Therefore, the lien attached only to the undivided half of the south half of the claim. That was the estate conveyed by the sheriff under the decree of foreclosure, and it was also the measure of the interest granted by the State of Oregon to the defendant J. J. Whitney. Though the plaintiff joined her husband in executing the mortgage, she, upon his death, became vested with a dower estate in an undivided half of the south half of the claim, notwithstanding the decree of foreclosure. The evidence also shows that the plaintiff secured deed from heirs of Andrew Wiley, conveying to her at the times stated all their estate in the entire donation land claim, viz.: Robert Wiley, a son, December 2, 1882; Susan Davidson, a daughter, July 7, 1885; and Amanda Rexford, a daughter, July 5, 1899. The writing which

the plaintiff signed September 16, 1907, agreeing to surrender all her right in the land to the defendant J. J. Whitney if she failed to pay him at the time specified the money which he was to advance for her, was not sealed, witnessed or acknowledged, and hence was insufficient in law to transfer her title in the premises. The reply admits that it was the intention of the mortgagors and of the board of land commissioners to create and accept a lien on the south half of the donation land claim. This avowal is evidently binding upon the plaintiff, but prior to the filing of her final pleading the concession there made had no legal efficacy, so far as disclosed by the evidence.

The defendant J. J. Whitney did not sign the memorandum to which the plaintiff appended her name. His failure to do so is unimportant, for his engagement as her attorney would have enabled her to maintain a suit to redeem the land from his purchase. Their relation as attorney and client was so confidential that her interests in the land could not have been barred except by a strict foreclosure on his part, when the decree would have provided that within a specified number of days her title was to be defeated upon failure to pay the sum of $1,000, interest, and expenses. The duties and obligations of the plaintiff and the defendant J. J. Whitney were reciprocal, and although she signed the memorandum in question she could have maintained a suit against him to redeem even after January 1, 1908.

The decree complained of is in the main correct. One·feature of the final determination has neither averment nor proof to support it. The court awarded the defendant J. J. Whitney $150 as attorney's fees, probably on the assumption that he was entitled to that sum for negotiating for the relinquishment. No

appeal was taken by the plaintiff from that part of the decree, which in this instance will be allowed to stand as given, since the defendant J. J. Whitney paid some taxes which were a lien on the premises.

The decree will therefore be affirmed, with the proviso that, unless the sum awarded the defendant J. J. Whitney be paid to the clerk of the lower court by or for the plaintiff on or before 60 days from the entry of the mandate therein, all her right, title, interest and estate in and to the south half of the donation land claim be barred and foreclosed.

AFFIRMED ON CONDITION.

Affirmed without condition.

MOTION TO MODIFY DECREE.

(147 Pac. 938.)

Opinion PER CURIAM.

In the former opinion in this cause the plaintiff's right to equitable relief is made to depend upon her payment to the clerk of the lower court, within a designated time, of the sum determined to be due from her to the defendant. The fact was overlooked that the amount of money requisite for that purpose had been so deposited, and the decree is affirmed without condition.          MOTION ALLOWED.

AFFIRMED WITHOUT CONDITION.