568             December 20, 2023             No. 663

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

BRIDGE CREEK RANCH, LLC,
*Relator-Respondent,*

*v.*

OREGON WATER RESOURCES DEPARTMENT
and Doug Woodcock,
Director of Oregon Water Resources Department,
*Defendants-Appellants.*

Marion County Circuit Court
22CV05598; A180610

Audrey J. Broyles, Judge.

Argued and submitted September 13, 2023.

Denise Fjordbeck, Assistant Attorney General, argued the cause and filed the brief for appellants. Also on the briefs were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Sara Kobak argued the cause and filed the brief for respondent. Also on the brief were Elizabeth E. Howard, and Schwabe Williamson & Wyatt PC.

Steven L. Shropshire and Jordan Ramis PC filed brief *amicus curiae* for Oregon Farm Bureau Federation and Oregon Association of Nurseries.

Olivier Jamin and Davis Wright Tremaine LLP filed the brief *amicus curiae* for Oregon Water Utility Counsel, League of Oregon Cities, and Special Districts Association of Oregon.

Andrew R. Missel and Brian Posewitz filed the brief *amicus curiae* for WaterWatch of Oregon.

Before Tookey, Presiding Judge, and Egan, Judge, and Kistler, Senior Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

The Oregon Water Resources Department (the OWRD) and its director (defendants) appeal from a judgment in this mandamus action under ORS 34.105 to 34.250 directing the OWRD to consider an application by relator Bridge Creek Ranch, LLC (relator) for a change in the "point of diversion" (POD) of water from a creek that serves as a source of water for relator's reservoir.[1] We have jurisdiction of the appeal pursuant to ORS 34.240.[2] We affirm the trial court's judgment directing the OWRD to consider relator's application for a change in the POD, although based on slightly different reasoning from that of the trial court.

The parties have stipulated to the relevant factual background: Relator owns the Painted Hills Reservoir, an "off-channel" reservoir,[3] and agricultural lands in Wheeler County, Oregon, irrigated with water stored in the reservoir. The water is diverted to fill the reservoir from Bear Creek and Bridge Creek on Bureau of Land Management (BLM) land.

Relator's right to store water is pursuant to two water storage right certificates granting relator the right "to store and use" the authorized volumes of water as irrigation storage water, Certificate 68551 and Certificate 68553. The certificates state that they are restricted to that "beneficial use" at the reservoir location.[4] Relator also holds Certificate 68552, a secondary water certificate granting it the right to divert and apply water both from the reservoir

---

[1] *See* OAR 690-385-0100(11) (Jan 2007) (defining "point of diversion" as "the place at which surface water is diverted from a surface water source as specified in the water right").

[2] ORS 34.240 provides:

"From the judgment of the circuit court or Oregon Tax Court, or judge thereof, refusing to allow a mandamus, or directing a peremptory mandamus, an appeal may be taken in like manner and with like effect as in an action."

[3] An "off-channel" reservoir is one that exists "outside a natural waterway," unlike an "on-channel" reservoir created by a dam or other impoundment within the waterway. OAR 690-300-0010(31) (Feb 2012).

[4] The certificates state that "[t]he right to store and use the water for the above purpose is restricted to beneficial use at the place of use described" as the reservoir location.

and from Bear Creek to irrigate specific lands described as authorized places of use in the secondary certificate.

In 2016, relator began working with the OWRD and the BLM to improve the reservoir and to store an additional 500 acre-feet of water for the purpose of supporting fish life. Relator received grants and obtained new reservoir permits and also obtained a separate secondary permit to release that amount of stored water for that purpose.

Through negotiations, relator and the BLM agreed that relator could have a temporary nonrenewable right-of-way over federal land, which expires in December 2024, to move the existing Bridge Creek POD from its current placement on federal land to a new downstream location on relator's own property.

In December 2021, relator submitted a permanent water transfer application to the OWRD under ORS 540.510 to change the Bridge Creek POD for its storage water right under Certificate 68553 and its permitted storage water right. The OWRD accepted and processed the POD transfer application for the *permitted* storage right under ORS 537.211(4) (addressing change of the point of diversion by holder of a water right permit) but declined to process the POD transfer application for the certificated storage water right under Certificate 68553 without a loss of the priority of the water right, stating that, under ORS 540.510(1), the OWRD does not have the "authority to make POD changes to R-rights for storage" established by water certificates.

Relator filed the instant petition for a peremptory or alternative writ, seeking to compel the OWRD to consider its application for a change in the POD. Relator also sought a declaration clarifying the OWRD's authority under ORS 540.510(1)(a) to allow changes in a POD and place of use in a certificated water storage right under Certificate 68553 without loss of the existing priority of the right. On the parties' cross-motions for summary judgment, the trial court granted relator's motion, denied defendants' motion, and issued the peremptory writ. In granting relator's motion for summary judgment and denying defendants' motion, the trial court agreed with relator's construction of the statutes:

"The court finds that storage of water for different purposes qualifies as 'water use.' As such, the right to store water under a water certificate is a right to 'water use established by *** a water certificate' under ORS 540.505(4)(b). The court also finds that OWRD has the authority to allow transfers of point of diversion and point of use for certificated storage water rights under ORS 540.530."

The peremptory writ of mandamus ordered the OWRD to begin processing relator's application for a transfer of the POD on Certificate 68553 within seven days of receiving a new and complete application. The OWRD has tendered a certificate showing compliance with the writ, in that it has begun to process relator's application.

Defendants appeal.[5] On appeal, defendants do not ask us to stay the peremptory writ; they state that the OWRD will process relator's application in the ordinary course of business. The parties agree, however, that this matter is not moot, because, although the trial court's judgment determined that the OWRD had authority to process relator's application, it did not direct that the application be granted. Should the OWRD issue an order denying the application, it is anticipated that relator will request a contested case hearing. Should the OWRD issue an order granting the application, it is anticipated that parties not currently involved in this litigation will file protests and request a contested case hearing, placing the OWRD's authority to allow a transfer of the POD for a certificated storage right directly at issue. We agree with the parties that, for the reasons cited, the matter is not moot, and we therefore undertake a review of the petition.

In reviewing the trial court's judgment, we consider first the standard for issuance of a writ of mandamus under ORS 34.110. A writ of mandamus may issue to an agency "to compel the performance of an act which the law specially enjoins." ORS 34.110. The legal right to compel the performance of the legal duty "must be plain and complete."

---

[5] WaterWatch of Oregon has filed an *amicus* brief is support of defendants' appeal. The Oregon Water Utility Council, the League of Oregon Cities, the Special Districts Association, the Oregon Farm Bureau Federation, and the Oregon Association of Nurseries have filed *amicus* briefs in support of relator's response.

*State ex rel Engweiler v. Felton*, 350 Or 592, 628, 260 P3d 448 (2011) (quoting *Florey v. Coleman*, 114 Or 1, 2, 234 P 286 (1925)). *See also United States of America v. Cohn*, 201 Or 680, 684, 272 P2d 982 (1954) ("[N]o petitioner is entitled to the remedy of mandamus unless he has a clear legal right to the performance of the particular duty sought to be enforced and unless there is a plain legal duty on the part of the defendant to perform the act."). Where, as here, the trial court's judgment as to the OWRD's authority depends on the construction of statutes, we review the judgment for errors of law. *See State ex rel Schrodt v. Jackson County*, 262 Or App 437, 443, 324 P3d 615 (2014) (reviewing for legal error trial court determination that mandamus procedure was applicable).

The parties agree that the mandamus petition presented only a question of the statutory construction of the water appropriation and water right transfer statutes, ORS chapter 537; ORS 540.505 to 540.530, and whether those statutes authorized the OWRD to consider an application to allow the holder of a certificated water storage right to make POD changes. The position of the OWRD is that, under ORS 540.510 and other relevant statutes, the OWRD is empowered to entertain an application to transfer the POD for a water right only from an applicant who holds a "water use subject to transfer," and that relator does not hold such a water use. In the view of the OWRD, as defined in ORS 540.505,[6] and based on statutory context, a certificated water storage right is not a "water use subject to transfer." The OWRD postulates that a certificate for the storage of water allows only appropriation and impoundment of water for a *subsequent* use and is not in and of itself a "beneficial use" or a water right that is established by a "water use."

In relator's view, the trial court correctly concluded that the storage of water pursuant to Certificate 68553 is, in and of itself, a water use that is subject to transfer, because the issuance of the certificate depends on a showing of beneficial use. Further, relator notes that the particular certificate that it holds states that the water storage is a beneficial use.

---

[6] ORS 540.505(4)(b) defines "water use subject to transfer" as a "water use established by * * * [a] water right certificate."

We address the statutory construction issue raised on appeal pursuant to the methodology set forth in *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009), and *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), beginning with the texts of the relevant statutes.

"All water within the state from all sources of water supply belongs to the public." ORS 537.110. ORS 537.120 provides:

> "Subject to existing rights, and except as otherwise provided in ORS chapter 538, all waters within the state may be appropriated for beneficial use, as provided in the Water Rights Act and not otherwise; but nothing contained in the Water Rights Act shall be so construed as to take away or impair the vested right of any person to any water or to the use of any water."

"Beneficial use" is "the basis, the measure and the limit of all rights to use of water in this state." ORS 540.610(1); *Alexander v. Central Ore. Irrig. Dist.*, 19 Or App 452, 457, 528 P2d 582 (1974) ("[A]ctual application of water to a beneficial use is the basis for recognized rights" under Oregon's water law.); *see* ORS 537.120 (water may be appropriated for a beneficial use and not otherwise); ORS 537.250(3) ("Rights to the use of water acquired under the provisions of the Water Rights Act, as set forth in a certificate issued under this section, shall continue in the owner thereof so long as the water shall be applied to a beneficial use under and in accordance with the terms of the certificate."). *See also* OAR 690-300-0010(5) (defining "beneficial use" as "the reasonably efficient use of water without waste for a purpose consistent with the laws, rules and the best interests of the people of the state").

The acquisition of a water right in Oregon occurs in two phases. In the first phase, a person must seek a permit for a water right. By application for a permit, the person applies for authorization to develop the source and begin making beneficial use of water. ORS 537.130 provides:

> "[A]ny person intending to acquire the right to the beneficial use of any of the surface waters of this state shall, before beginning construction, enlargement or extension of any ditch, canal or other distributing or controlling works,

or performing any work in connection with the construction, or proposed appropriation, make an application to the Water Resources Department for a permit to make the appropriation."

An application for a permit to appropriate water for a beneficial use is made pursuant to ORS 537.140:

"(1)(a) Each application for a permit to appropriate water shall be made to the Water Resources Department on a form prescribed by the department and shall set forth:

"* * * * *

"(C) The nature and amount of the proposed use;

"* * * * *

"(d) If for construction of a reservoir, the application shall give the height of dam, the capacity of the reservoir, and the uses to be made of the impounded waters."

If the OWRD determines that the water is available for the requested beneficial use, the OWRD may issue a permit. The permit begins the time during which the applicant must "perfect" the water right, *i.e.*, must develop the beneficial use authorized by the permit so as to acquire a certificate. A permit may be amended to change the conditions of the permit or the point of diversion. ORS 537.211(4), (5). A water right that is *permitted* is treated under the statutes as personal property and is subject to cancellation if not properly developed or used. ORS 537.260.

In the second phase, the permittee applies for a water right certificate to appropriate water, which is issued only after the beneficial use identified in the permit is fully developed. A certificate to appropriate water may be acquired and maintained only by "perfecting" and continuing an appropriation of water for beneficial use. ORS 537.250 provides:

"(1) After the Water Resources Department has received a request for issuance of a water right certificate accompanied by the survey required under ORS 537.230 that shows, to the satisfaction of the department, that an appropriation has been perfected in accordance with the provisions of the Water Rights Act, except as provided in subsection (4) of this section, the department shall issue

to the applicant a certificate of the same character as that described in ORS 539.140. The certificate shall be recorded and transmitted to the applicant as provided in that section.

"*****

"(3)   Rights to the use of water acquired under the provisions of the Water Rights Act, as set forth in a certificate issued under this section, shall continue in the owner thereof so long as the water shall be applied to a beneficial use under and in accordance with the terms of the certificate, subject only to loss:

"(a)   By nonuse as specified and provided in ORS 540.610; or

"(b)   As provided in ORS 537.297."

A *certificated* water right is "vested," meaning that it is treated as an interest in real property. *Green v. Wheeler*, 254 Or 424, 430, 458 P2d 938 (1969), *cert den*, 397 US 990 (1970) (explaining that the appropriative right vests with the issuance of certificate). A certificated water right can only be lost upon a showing of one of the circumstances described in ORS 537.250(3)(a) or (b).

The acquisition of the right to *store* water is subject to the same provisions as any other water right. *See* 46 Op Atty Gen 290, 292-93 (1989) ("Since 1909, rights to appropriate water for storage have been acquired under the same scheme as any other water right."). ORS 537.400[7] separately

---

[7] ORS 537.400 provides, in relevant part:

"(1) All applications for reservoir permits shall be subject to the provisions of ORS 537.130, 537.140, 537.142 and 537.145 to 537.240, except that an enumeration of any lands proposed to be irrigated under the Water Rights Act shall not be required in the primary permit. But the party proposing to apply to a beneficial use the water stored in any such reservoir shall file an application for permit, to be known as the secondary permit, in compliance with the provisions of ORS 537.130, 537.140, 537.142 and 537.145 to 537.240. The application [for the secondary permit] shall refer to the reservoir for a supply of water and shall show by documentary evidence that an agreement has been entered into with the owners of the reservoir for a sufficient interest in the reservoir to impound enough water for the purposes set forth in the application, that the applicant has provided notice of the application to the operator of the reservoir and, if applicable, that an agreement has been entered into with the entity delivering the stored water. When beneficial use has been completed and perfected under the secondary permit, the Water Resources Department shall take the proof of the water user under

addresses applications for reservoir permits, which are also subject to the same provisions that govern other water right permit applications. An applicant for a permit to store water obtains a "primary water right," which is defined as "the water right designated by the Water Resources Commission as the principal water supply for the authorized use, or if no designation has been made, the water right designated by the applicant as the principal water supply for the authorized use." ORS 540.505(2). A secondary permit must then be sought for use of the water from the reservoir. ORS 537.400.[8] The final certificate of appropriation issues only after the beneficial use has been completed and perfected under the secondary permit.

Thus, as OWRD states in its briefing to us,

"[t]he primary water right to store water is *** inextricably linked to the secondary permit to put the water to beneficial use, with the reservoir right supplying the supply of water to be put to beneficial use under the secondary permit. This is different from most permits to appropriate water, which do not require a secondary permit to allow beneficial use.

---

the permit. The final certificate of appropriation shall refer to both the ditch described in the secondary permit and the reservoir described in the primary permit.

"(2)  Whenever application is made for permit to store water in a reservoir or pond for any beneficial use which does not contemplate future diversion of the stored water except by livestock drinking from stock water ponds, the extent of utilization thereof may be included in the reservoir permit and no secondary permit shall be required. However, in cases where water from a stream is required to maintain a reservoir or pond by replacing evaporation and seepage losses, or is required to maintain suitable fresh water conditions for the proposed use and to prevent stagnation, the applicant for permit to store water in such reservoir or pond shall also file an application for permit to appropriate the waters of the stream."

[8]  There are two circumstances in which a secondary permit is not required: If the permit is sought "to store water in a reservoir or pond for any beneficial use which does not contemplate future diversion of the stored water," such as for use as a scenic attraction, only a storage water permit is necessary. ORS 537.400(2). Additionally, small reservoirs established before January 1, 1995, are presumed to constitute a "beneficial use." ORS 537.405(1) ("Reservoirs in existence on or before January 1, 1995, that store less than 9.2 acre feet of water or with a dam or impoundment structure less than 10 feet in height, are found to be a beneficial use of the water resources of this state."). But apart from those exceptions, the diversion of water from storage must be pursuant to a separate application and permit known as a "secondary permit."

> "The permit allows the person intending to store water to construct the necessary works but is not itself a perfected water right. A water right is perfected when the water is put to beneficial use, such as irrigation, as evidenced by a 'final proof survey.' OWRD then issues a water right certificate. ORS 537.250."

Here, the water is to be diverted from storage in the reservoir for irrigation use. Thus, ORS 537.400(1) requires a secondary permit for use of the water. The secondary permit is also a prerequisite to the issuance of a certificate for the reservoir:

> "All applications for reservoir permits shall be subject to the provisions of ORS 537.130, 537.140, 537.142 and 537.145 to 537.240, except that an enumeration of any lands proposed to be irrigated under the Water Rights Act shall not be required in the primary permit. *But the party proposing to apply to a beneficial use the water stored in any such reservoir shall file an application for permit, to be known as the secondary permit, in compliance with the provisions of ORS 537.130, 537.140, 537.142 and 537.145 to 537.240. The application shall refer to the reservoir for a supply of water and shall show by documentary evidence that an agreement has been entered into with the owners of the reservoir for a sufficient interest in the reservoir to impound enough water for the purposes set forth in the application, that the applicant has provided notice of the application to the operator of the reservoir and, if applicable, that an agreement has been entered into with the entity delivering the stored water.* When beneficial use has been completed and perfected under the secondary permit, the Water Resources Department shall take the proof of the water user under the permit. The final certificate of appropriation shall refer to both the ditch described in the secondary permit and the reservoir described in the primary permit."

(Emphases added.) Relator's predecessor happens to have been the applicant for the secondary permit. The OWRD issued to relator's predecessor reservoir permit R-9896, authorizing "the construction of Mitchell Ranch Reservoir Enlargement and storage of water from Bear Creek and Bridge Creek," to be appropriated under a permit with a priority date of October 17, 1983, which is not at issue in this case. The OWRD subsequently issued two certificates

to relator's predecessor for the storage of the water, confirming "the right to store the waters" of Bridge Creek and Bear Creek, recorded as Certificates numbered 68551 and 68553. The OWRD also issued a separate certificate to relator's predecessor confirming the right to *use* the water for irrigation, recorded as Certificate number 68552.

Thus, three certificates were issued to relator's predecessor for the reservoir—two for water storage under the primary permit and one for use of the stored water under the secondary permit.

To change any element of a certificate, such as a POD or type of use, the certificate holder must apply to the OWRD under ORS 540.510(1). That statute provides that "the holder of a water use *subject to transfer* may, upon compliance with the provisions of ORS 540.520 and 540.530, change the use and place of use, the point of diversion or the use of the water without losing priority of the right." ORS 540.510(1)(a) (emphasis added); *see* ORS 540.520; OAR 690-380-3000 (Oct 6, 2006) (describing application requirements).[9] An application submitted under ORS 540.510 "shall be approved if [the OWRD] determines," among other things, that "[t]he water right affected by the proposed transfer is a water use subject to transfer as defined in ORS 540.505(4) and OAR 690-380-0100(14)." OAR 690-380-5000(1) (Oct 6, 2006);[10] *see id*. (describing conditions for approval); ORS 540.530 (same).

---

[9] We refer to the rules that were in effect when the application was filed.

[10] OAR 690-380-5000 (Oct 6, 2006) provides:

"(1) A transfer application shall be approved if the Department determines that:

"(a) The water right affected by the proposed transfer is a water use subject to transfer as defined in ORS 540.505(4) and OAR 690-380-0100(14) and, for a right described under 690-380-0100(14)(d), the proof of completion has been approved under 690-380-6040;

"(b) The portion of the water right to be transferred is not cancelled pursuant to ORS 540.610;

"(c) The proposed transfer would not result in enlargement as defined in OAR 690-380-0100(2);

"(d) Except as provided in OAR 690-380-5030, the proposed transfer would not result in injury as defined in 690-380-0100(3); and

"(e) Any other requirements for water right transfers are met."

Here, as noted, relator submitted an application to transfer the POD for Certificate 68553, which the OWRD had issued to relator's predecessor for storage at the reservoir. And as noted, here, in response to relator's application to change a POD under ORS 540.510, the OWRD returned the application without processing it, stating, "The Department does not have the authority to make POD changes to R-rights for storage." The rationale provided by the OWRD was that the water storage certificate was not a water use subject to transfer.

The peremptory writ issued by the trial court directs the OWRD to process relator's application. The nub of the dispute on appeal turns on whether relator has the right to request (and OWRD has authority to process) a change in the POD for Certificate 68553 under ORS 540.510(1), which defines the process for seeking to change a water right certificate without losing priority of the right.[11] ORS 540.510(1)(a) provides in relevant part:

"(a)   Except as provided in subsections (2) to (8) of this section, all water used in this state for any purpose shall remain appurtenant to the premises upon which it is used and no change in use or place of use of any water for any purpose may be made without compliance with the provisions of ORS 540.520 and 540.530. However, *the holder of any water use subject to transfer may, upon compliance with the provisions of ORS 540.520 and 540.530, change the use and place of use, the point of diversion or the use of the water without losing priority of the right.*"

(Emphases added.) The holder of a "water use subject to transfer" may change "the use and place of use, the point of diversion or the use of the water" without a loss of priority. ORS 540.510(1)(a).

Defendants point further to ORS 540.505(4), which defines "water use subject to transfer," as used in ORS 540.510(1):

---

[11] The parties do not address, and we therefore do not consider, the issue of OWRD's "authority" to consider the application, as distinct from OWRD's rejection of the application on its merits based on OWRD's understanding that the relevant statutes do not permit that type of change.

"'Water use subject to transfer' means a *water use established by*:

"(a)   An adjudication under ORS chapter 539 as evidenced by a court decree;

"(b)   A water right certificate;

"(c)   A water use permit for which a request for issuance of a water right certificate under ORS 537.250 has been received and approved by the Water Resources Commission under ORS 537.250; or

"(d)   A transfer application for which an order approving the change has been issued under ORS 540.530 and for which proper proof of completion of the change has been filed with the Water Resources Commission."

(Emphasis added.) Defendants argue that storage is not a *use* of water and that, therefore, taken together, the above provisions demonstrate that holders of water storage certificates do not, without a loss of priority, have the ability to seek to transfer the place of use of storage or POD of water and, further, that the OWRD does not have authority to consider requests for such changes.

Relator responds that, as set forth in ORS 540.505(4)(b), it holds a water use subject to transfer, because Certificate 68553 is a water right certificate. Defendants reply that although Certificate 68553 is a water right certificate, it does not constitute a water use subject to transfer, because, under ORS 540.505(4), a "water use" is a reference to an actual beneficial use of the water, and storage, with limited exceptions, does not constitute a beneficial use. *See* ORS 540.610(1) (all water rights in Oregon are based on beneficial use of water); *Teel Irrigation Dist. v. Water Resources Dept.*, 323 Or 663, 667, 919 P3d 1172 (1996) ("The water right is perfected when the water actually is put fully to a beneficial use.").[12]

---

[12] The legislature has declared "certain important uses, including irrigation," to be beneficial. *Hennings v. Water Res. Dept.*, 50 Or App 121, 125, 622 P2d 333 (1981) (citing ORS 536.300). Pursuant to OAR 690-300-0010(5), "beneficial use" means "the reasonably efficient use of water without waste for a purpose consistent with the laws, rules and the best interests of the people of the state." For example, for the purposes of statewide water policy, the OWRD defines "beneficial use" as "an instream public use or a use of water for the benefit of an appropriator for a purpose consistent with the laws and the economic and general

The question whether water storage is, in and of itself, a "use" of water was addressed many years ago by the Supreme Court in *Cookinham v. Lewis*, 58 Or 484, 491-92, 114 P 88, *reh'g denied*, 58 Or 495, 115 P 342 (1911). There, the court had before it a decision by the Oregon "Board of Control" rejecting an application for a reservoir permit for the purpose of reclamation of public desert land. In considering the statutory predecessor of ORS 537.400 in Oregon's Water Code, the court stated that the type of use that supports the issuance of a permit for water storage is not a "use of water." The court explained the distinction between a permit for storage and one for the use of the stored water:

> "The primary reservoir permit, provided for by [the Oregon Water Code, Or Laws 1909 Section 58)], contemplates a storage of the water in some locality where it can be utilized for irrigation. The secondary permit contemplates that users of the water shall acquire a permanent ownership by agreement with the owner for a specified quantity of the stored water for the needs of and use upon his land, and when reclamation is contemplated the water becomes appurtenant to his land. The Water Code makes a distinction between a permit for diversion of water and one to construct a reservoir and store surplus water. *The latter does not include the right to divert and use such stored water, which must be the subject of the secondary permit.*"

58 Or at 491-92 (emphasis added). A permit for storage, *in and of itself*, the court held, does not constitute or include the right to use stored water; it is the secondary permit that applies the water to beneficial use. *Id.* at 492; *see also*

---

welfare of the people of the state" that "includes, but is not limited to, domestic, fish life, industrial, irrigation, mining, municipal, pollution abatement, power development, recreation, stockwater and wildlife uses." OAR 690-400-0010; *see also, e.g.*, ORS 537.142(2) ("The use of water for a salmon and trout enhancement project *** is a beneficial use[.]"); ORS 537.334(1) ("Public uses are beneficial uses."); *see also* ORS 536.300(1) ("The Water Resources Commission shall proceed as rapidly as possible to study: Existing water resources of this state; means and methods of conserving and augmenting such water resources; existing and contemplated needs and uses of water for domestic, municipal, irrigation, power development, industrial, mining, recreation, wildlife, and fish life uses and for pollution abatement, all of which are declared to be beneficial uses, and all other related subjects, including drainage, reclamation, floodplains and reservoir sites."). *See also Fort Vannoy Irrigation Dist. v. Water Resources Commission*, 345 Or 56, 78, 188 P3d 277 (2008) (commenting that both ORS 540.520(8) and ORS 540.523(3) treat "beneficial use" and "water use [established by a water right certificate]" as distinct).

*Nevada Ditch Co v. Bennett*, 30 Or 59, 89, 45 P 472 (1896) ("An appropriation proper is not made until there has been an actual application of the water claimed, to some beneficial purpose, or some useful industry. All rights acquired prior to this time, at whatsoever step in the process, amount simply to a claim of an appropriation[.]"); 25 Op Atty Gen 206 (1951) ("Storage in and of itself is not a use. Storage must be for a future purpose.").

Relying on *Cookinham*, defendants contend that, although there may be reservoir permits and certificates that establish both a right to store and to use water, *see* ORS 537.400(2) (describing storage that does not "contemplate future diversion of the stored water"), as a general rule, a certificate for water storage does not itself constitute "water use," as that term is used in ORS 540.510. Because, in defendants' view, storage is not a "use," nor is it, in defendants' view, a "beneficial use;" thus, in defendant's view, it cannot be subject to a right to transfer.

We agree with defendants that a use subject to transfer must be a beneficial use and that, with limited exceptions, a beneficial use of stored water is established not through the primary permit for storage but through the secondary permit.

We nonetheless conclude that relator's Certificate 68553 represents a water use subject to transfer under ORS 540.510. That is because whether Certificate 68553 represents a water use subject to transfer must be viewed in the context of Certificate 68552, which, as required by ORS 540.400(1), was a prerequisite to the issuance of Certificate 68553 and which authorizes the use of water. As provided in ORS 537.400, a certificate for storage is issued only when beneficial use has been completed and perfected under the secondary permit. And, as OWRD acknowledges, the two are "inextricably linked." "The final certificate of appropriation shall refer to both the ditch described in the secondary permit and the reservoir described in the primary permit." ORS 537.400. The holder of the storage certificate and the holder of the certificate for use of the water together create the appropriation and the beneficial use. *See also Nevada Ditch Co.*, 30 Or at 98 (addressing the relationship between

the appropriator of water and the persons who put the water to beneficial use and observing, "in whatever capacity the parties to the appropriation may be considered," both were necessary to appropriate the water). In *Fort Vannoy Irrigation v. Water Resources Comm.*, 345 Or 56, 78, 188 P3d 277 (2008), the court said that the "terms and conditions" of the certificate will dictate the use of the water. The use permitted by Certificate 68553 can only be determined with reference to Certificate 68552, which, conversely, depends on Certificate 68553. Together, the two certificates refer to a beneficial use of the water and, hence, to a water use subject to transfer.

Defendants note that ORS 540.510(1)(b) provides that the holder of a water right certificate authorizing storage may change "the type of use" identified in the certificate without losing priority:

> "*A holder of a water right certificate that authorizes the storage of water* may change *the type of use* identified in the water right certificate, as described in subsection (1)(a) of this section, without losing priority of the right."

(Emphases added.) Defendants contend that ORS 540.510(1)(b) demonstrates a legislative intention to limit the change that can be made by the holder of a water right certificate for storage to "type of use," excluding the other types of changes listed in ORS 540.510(1)(a), including the POD. In defendants' view, understanding a "water use subject to transfer" to be capable of including a water right for storage would render ORS 540.510(1)(b) superfluous, because the change in "type of use" that it explicitly allows would already be encompassed within ORS 540.510(1)(a).

Although the OWRD's construction is a plausible one, we reject it for several reasons. First, ORS 540.510(1)(b) does not state that the holder of a water storage certificate may change *only* the type of use. Additionally, a change to the "type of use" permitted by ORS 540.510(1)(b), is not explicitly among the changes listed in ORS 540.510(1)(a). Thus, textually, it is possible to understand ORS 540.510(1)(b) to supplement the changes permitted in ORS 540.510(1)(a) rather than to limit the rights of a holder of a water storage certificate, as defendants contend. Under that construction,

ORS 540.510(1)(b) is not duplicative of ORS 540.510(1)(a) or superfluous.

But beyond the text, the legislative history of ORS 540.510(1)(b) leads us to conclude that ORS 540.510(1)(b) does not have strong bearing on the legislature's intention with respect to ORS 540.510(1)(a). The Supreme Court discussed the history of ORS 540.510 in *Fort Vannoy Irrigation*, 345 Or at 74-78. The court explained that a provision for the change of the use, place of use, and point of diversion has been a part of the Water Code since 1927. *Id.* at 75. The court explained that, in 1991, the statute was amended to make the right of transfer available only to the "owner of any *certificated* water right." *Id.* (citing Or Laws 1991, ch 957, § 7(1)) (emphasis added). Then, in 1995, the legislature amended ORS 540.510(1)(a) by deleting the phrase "owner of any certificated water right" and substituting the phrase "holder of any water use subject to transfer." *Fort Vannoy Irrigation*, 345 Or at 75; Or Laws 1995, ch 274, § 2. The legislature also enacted a four-part definition of the phrase "water use subject to transfer," codified at ORS 540.505. *Fort Vannoy Irrigation*, 345 Or at 76; Or Laws 1995, ch 274, § 1. The parties agree that the amendments were intended to *expand* the availability of changes beyond only the owner of a certificated water right, and that water storage certificates were not expressly addressed. *See Fort Vannoy Irrigation.*, 345 Or at 75-77 ("[T]he legislature abandoned the exclusive focus on certificated water rights in the 1991 version of ORS 540.510(1) by deleting the phrase 'owner of any certificated water right,' substituting the phrase 'holder of any water use subject to transfer,' and enacting a four-part definition of the phrase 'water use subject to transfer' that extended beyond certificated water rights." The effect of the amendments was to extend the transfer provision to "inchoate water rights"— water rights that are not yet "vested," because a certificate has not yet been issued.).

The 1995 amendments made no specific mention of water storage rights or certificates. But the amendments led the OWRD to reevaluate the extent to which water storage certificates could be changed without a loss in priority. In 2018, the Oregon Department of Justice (DOJ) advised

the OWRD that the storage of water is not a "use subject to transfer," as defined in ORS 540.505(4)(b), because it is not a "use" of water. Thus, the DOJ advised the OWRD that water storage is not a use that is eligible to be changed without a loss of priority under ORS 540.510(1), and that the holder of a water storage certificate could not make changes without a loss of priority.

Then, in 2021, the Legislative Assembly enacted ORS 540.510(1)(b), directly in response to DOJ's opinion and OWRD's change in policy, to make explicit the right of a water storage certificate holder to change the "type of use," the most commonly requested change. Or Laws 2021, ch 633, § 1. Defendants contend that that amendment supports their conclusion that a water storage certificate holder can change *only* the type of use without a loss of priority.

Of course, we recognize that various subsections of a statute should be construed together. *See Wetherell v. Douglas County*, 342 Or 666, 678, 160 P3d 614 (2007) (explaining that the court should not look at one subsection of a statute in a vacuum but should construe "each part together with the other parts in an attempt to produce a harmonious whole"). But, as the Supreme Court has said, with the exception of statutory amendments that materially change the text of an earlier statute, either explicitly or by implication, *State v. Ofodrinwa*, 353 Or 507, 529-30, 300 P3d 154 (2013), a later legislature's understanding of the meaning of a previously enacted statute does not have bearing on what that earlier statute means. *See DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984) (explaining that "[t]he views legislators have of existing law may shed light on a new enactment, but it is of no weight in interpreting a law enacted by their predecessors"). The legislature did not amend subsection (1)(a) when it enacted subsection (1)(b) in 2021, and there is no necessary implication or indication in the legislative history that the intention in the adoption of subsection (1)(b) was to alter the meaning of subsection (1)(a). We conclude that the enactment of subsection (1)(b) cannot be viewed as expressing an intention to modify subsection (1)(a). Thus, the legislature's view that, in light of the DOJ's 2018 construction of ORS 540.510(1)(a), it was necessary to

enact ORS 540.510(1)(b) to explicitly authorize changes in the type of use of a water reservoir certificate does not weigh in our construction of ORS 540.510(1)(a).

We conclude that, although, as the court held in *Cookinham*, with certain exceptions not applicable here, the storage of water in and of itself is not a "use" of water, when considered in the context of the secondary permit, it can represent a water use subject to transfer. When the storage of water under Certificate 68553 is considered, as it must be, in the context of the use of water under Certificate 68552, we agree with the trial court that relator's Certificate 68553 establishes a "water use subject to transfer" in the sense contemplated by ORS 540.510. We therefore conclude that the trial court correctly determined that relator's application for a change in POD should be considered by the OWRD.

Affirmed.